ANDERSON *v.* LEWIS.

1. BANKS AND BANKING—JOINT ACCOUNT—FRAUD—EVIDENCE.
    Fact that no fraud had been committed by surviving depositor of herself and brother in the establishment of a joint bank account *held,* established by evidence in suit by legal representative of brother's estate to determine rights in the account (CL 1948, § 487.703).

2. SAME—JOINT ACCOUNT—STATUTORY PRESUMPTION—TITLE—EVIDENCE.
    The statutory presumption of ownership in the survivor of a joint bank account is sufficient to establish the title to the account in the survivor in the absence of competent evidence (CL 1948, § 487.703).

REFERENCES FOR POINTS IN HEADNOTES
[1–3] See, generally, 7 Am Jur, Banks § 425.

3. SAME—JOINT ACCOUNT—STATUTORY PRESUMPTION—EVIDENCE.

Testimony presented by legal representative of deceased who had, with his sister, defendant herein, established a joint bank account *held,* insufficient to overcome statutory presumption that title to the funds passed to defendant sister upon the brother's death, where it appears she had committed no fraud in opening the account and had made no contributions thereto although it appears she entertained a belief that her rights in the account were different prior to and after the death of her brother (CL 1948, § 487.703).

Appeal from Oakland; Doty (Frank L.), J. Submitted January 6, 1955. (Docket No. 32, Calendar No. 46,314.) Decided March 9, 1955.

Bill by Murel F. Anderson, administrator, and Philip E. Rowston, ancillary administrator, estate of John J. Anderson, deceased, against Elizabeth Lewis and Community National Bank of Pontiac, Michigan, a banking corporation, to determine right to funds in joint account. Oakland County Bureau of Social Aid intervened as party defendant to assert right to reimbursement for funds advanced defendant Lewis. Bill dismissed and bank directed to pay funds to defendant Lewis. Plaintiffs appeal. Affirmed.

*Beer & Osgood (John B. Osgood,* of counsel), for plaintiffs.

*Estes & Cooney,* for defendant Lewis.

*Charles A. Davis,* for defendant Oakland County Bureau of Social Aid.

SHARPE, J. John J. Anderson opened a savings account in his own name on July 26, 1943, in the Community National Bank of Pontiac, Michigan. The initial deposit was $1,300. Additional deposits were made by him during his lifetime. On Septem-

ber 4, 1943, the name of Elizabeth Lewis was added to the account.

The card signed by John J. Anderson and Elizabeth Lewis provided in part as follows:

"The undersigned joint depositors hereby agree each with the other and with the above bank that all sums now on deposit heretofore · or hereafter deposited by either or both of said joint depositors with said bank to their credit as such joint depositors with all the accumulations thereon, are and shall be owned by them jointly, with right of survivorship and be subject to the check or receipt of either of them or the survivor of them and payment to or on the check of either or the survivor shall be valid and discharge said bank from liability."

It also appears that Elizabeth Lewis made no contributions to the account. In April, 1941, the application by Elizabeth Lewis for old-age assistance was approved and she has received aid since that date. John J. Anderson died March 23, 1954. The passbook to the account in question was found by the administrator of John J. Anderson's estate among the deceased's personal papers.

On April 6, 1954, suit was begun in the circuit court of Oakland county by the administrator of John J. Anderson's estate to terminate any interest that Elizabeth Lewis might have in the bank account. Following the filing of the bill of complaint, Elizabeth Lewis entered a special appearance for the purpose of moving to dismiss the bill of complaint for the following reasons:

"2. Because it appears from the face of said bill of complaint, that the plaintiff has an adequate remedy at law, if any remedy he has.

"3. Because said suit involves property located in Oakland county, Michigan, of which said John J. Anderson was a resident at the time of his death, and

that no administrator has been appointed in Oakland county, Michigan.

"4. Because the plaintiff is not the duly qualified and acting administrator of said estate in Oakland county, Michigan."

On April 20, 1954, the trial court denied the above motion without prejudice. On May 5, 1954, Elizabeth Lewis filed an answer to plaintiff administrator's bill of complaint in which she affirmatively alleges:

"In further answer to said bill of complaint as a whole, and by way of affirmative defense, this defendant alleges that said moneys on deposit with the defendant Community National Bank, were held by this defendant and the plaintiff's decedent as joint tenants, prior to the death of said John J. Anderson, and that upon the death of said John J. Anderson, the funds in said accounts became the sole property of this defendant, and that the plaintiff has no interest therein whatsoever.

"That no administrator has been appointed for said deceased in Oakland county, Michigan, and that the plaintiffs (plaintiff) therefore (is) not a proper party plaintiff, and is not entitled to maintain this suit."

On June 11, 1954, the Oakland county bureau of social aid, a subdivision of the department of social welfare of the State of Michigan, filed a petition in the above cause to intervene as a party defendant for the purpose of establishing a lien upon any sum of money which might be recovered by Elizabeth Lewis. Upon the filing of the above petition, the trial court entered an order granting the petition.

The cause came on for trial. Philip E. Rowston, ancillary administrator of the estate of John J. Anderson, testified that on April 7, 1954, he served some papers on Elizabeth Lewis at her home:

"*A.* I explained the matter here pending to her as fully as I could and at that time asked her if she had made any contributions to this account at all. She replied she had not because she was on social aid for many years. I then asked her if she claimed any interest in the account at all and she said 'No' and I asked if there were any further questions and she said she didn't think she would do anything about the matter and I advised her she could either consult members of her family or an attorney if there were any other questions about it. At that time I left."

Eva F. Clark, an employee of the bureau of social aid, testified that she visited Elizabeth Lewis on August 5, 1952, August 31, 1953, May 14, 1954, and June 8, 1954. She also testified as to a conversation with Elizabeth Lewis:

"*A.* Well, I asked her why she had failed to report that and she said that she hadn't understood that she should report that, that she didn't feel that until —as long as her brother was living she had any claim on the money, but she did have an understanding, or a feeling, at his death it was her money if she survived him."

At the close of this testimony, defendant, Elizabeth Lewis, through her attorney, made a motion to dismiss the bill of complaint:

"*Mr. Estes:* Under the signature card introduced in evidence here and under our statute there is a presumption in these cases that a deposit of this kind belongs to a survivor in the absence of some competent proof to show otherwise. There has been nothing introduced which would amount to competent proof of any kind but what would show the defendant, Elizabeth Lewis, entitled to this deposit. There has been an attempt here to show some kind of admission of some kind, but legal rights are not frittered away by somebody not wanting to

make a claim to their own property. The only possible theory on which that claim could be made would be upon a basis of estoppel—she made a statement with reference to this account and somebody acted on that to their detriment. There is no evidence of estoppel here, no claim of fraud, no claim of undue influence. There is nothing to overcome this presumption created by the statute that on (an) account of this kind belongs to the survivor."

The trial court granted the motion and in so doing stated:

"All her admissions indicate she did not understand what her rights were, but she did think she had an interest which wouldn't take place until after her brother died. I don't think that overcomes the presumption. There is no fraud in the case. There is no undue influence. The motion is granted without costs."

Plaintiffs appeal and urge that the trial court was in error in granting defendant Lewis' motion to dismiss on the ground that the statutory presumption of ownership of the joint account had not been overcome by the testimony of Philip E. Rowston and Eva F. Clark.

CL 1948, § 487.703 (Stat Ann § 23.303), provides in part:

"The making of the deposit in such (joint) form shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding, to which either such banking institution or surviving depositor or depositors is a party, of the intenton of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors."

It is well established in this case, as found by the trial court, that there was no fraud committed by Elizabeth Lewis in the establishment of the joint bank account.

In *In re Taylor's Estate,* 213 Mich 497, we held that in the absence of competent evidence to the contrary, the presumption created by the statute is sufficient to establish the title to the account in the survivor.

Plaintiffs rely upon the evidence of 2 witnesses, whose testimony has heretofore been mentioned, as an admission against interest, sufficient to overcome the statutory presumption.

In *Meigs* v. *Thayer,* 289 Mich 680, the survivor in a joint account stated that she claimed no interest in the joint account, and she made an assignment covering her interest in the account. Our Court, in setting aside this assignment, said (p 683):

"Defendants claim there was sufficient evidence to overcome the statutory presumption; that plaintiff declared she made no claim to the deposit and voluntarily joined in placing the same in the hands of the executor, that the attorney for the estate was under no obligation to advise plaintiff of her legal rights and his silence was proper and plaintiff's claimed mistake does not entitle her to any relief.

"While it is true that the attorney for the estate was under no obligation to advise plaintiff as to her legal rights, of which we must assume he was fully aware, inclusive of the law; that her rights were not contingent upon contribution to the deposit and that her disclaimer was manifestly based on a mistake engendered by his noncontrolling questions, he was bound to recognize her manifest ignorance and not plant advantage to the estate thereon.

"The express intention of Miss MacFarlane, in the original application creating the deposit, stands unaffected by subsequent acts on her part and, there having been no fraud or undue influence, we must let stand what she let stand to the time of her death. Had she desired otherwise she was enabled at any time to withdraw the whole or any part of the deposit.

"Under the evidence and the law sole title to the deposit vested in plaintiff at the death of Miss MacFarlane, and plaintiff's release of such right and title was by reason of ignorance of her rights and the mistake brought about by questions well calculated to impress her as vital to her right to claim the deposit."

In the case at bar Elizabeth Lewis was not aware of her legal rights when she had a conversation with the witnesses heretofore mentioned. Her belief that her rights were different in the joint account prior to and after the death of John J. Anderson cannot change the legal status of the joint account.

In our opinion the testimony offered by the 2 witnesses does not overcome the statutory presumption. The decree is affirmed, with costs to Elizabeth Lewis.

CARR, C. J., and BUTZEL, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.

SMITH, J., took no part in the decision of this case.