GUILDS v MONROE COUNTY BANK

1. JOINT TENANCY—RIGHT OF SURVIVORSHIP.

The right of the survivor of a joint account to the proceeds of the account in the absence of fraud or undue influence is established by statute (MCLA 487.703).

2. JOINT TENANCY—CREDITORS' RIGHTS.

The creditors of a joint tenant can reach his interest in the bank account while both of the joint tenants are alive, but the surviving joint tenant takes free of the debts of his cotenant so that creditors of the deceased cotenant can no longer reach the proceeds of the account.

Appeal from Monroe, William J. Weipert, Jr., J. Submitted Division 2 June 10, 1972, at Detroit. (Docket No. 13192.) Decided June 27, 1972.

Complaint by Viola S. Guilds against the Monroe County Bank for recovery of funds. Judgment for plaintiff. Defendant appeals. Affirmed.

*Ready & Ready,* for plaintiff.

*William J. Braunlich* and *Benjamin A. Simons,* for defendant.

Before: DANHOF, P. J., and LEVIN and BORRADAILE,* JJ.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 10 Am Jur 2d, Banks §§ 369, 372.
[2] 20 Am Jur 2d, Cotenancy and Joint Ownership § 3.
Joint bank account as subject to attachment, garnishment, or execution by creditor of one of the joint depositors, 11 ALR3d 1465.

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

DANHOF, P. J. Viola S. Guilds as survivor of her husband, Harold Kenneth Guilds, brought suit against the defendant bank to recover funds on deposit in a joint savings account, payable to either, or to the survivor of them.

Defendant answered admitting the existence of such an account but claiming a right to setoff by reason of an indebtedness due to defendant based on certain promissory notes executed solely by the deceased husband. Defendant alleged that all the money was deposited by the husband and was solely money from his earnings and that no part of the money belonged to the survivor wife.

Thereafter, Viola S. Guilds died and the co-administrators of her estate were substituted as plaintiffs. A motion for summary judgment was made under GCR 1963, 117.2(2) alleging that the defendant had failed to state a valid defense. The trial court granted the motion holding that the plaintiffs were entitled to the money in the account.

The right of survivorship in a joint account is controlled by statute. MCLA 487.703; MSA 23.303[1] provides:

"When a deposit shall be made, in any bank by any person in the name of such depositor or any other person, and in form to be paid to either or the survivor of them, such deposits thereupon and any additions thereto, made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same together with all interest thereon, shall be held for the exclusive use of the persons so named and may be paid to either during the lifetime of both, or to the survivor after the death of 1 of them, and such payment and the receipt or

---

[1] For a discussion of this and former statutes see Wellman, *The Joint and Survivor Account in Michigan—Progress Through Confusion,* 63 Mich L Rev 629 (1965).

acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said banking institution for all payments made on account of such deposits prior to the receipt of said bank of notice in writing not to pay such deposit in accordance with the terms thereof.

"When a deposit has been made, or shall hereafter be made, in any banking institution transacting business in this state, in the names of 2 or more persons, payable to either or the survivor or survivors, such deposit or any part thereof or any interest or dividend thereon and any additions thereto, made by any 1 of the said persons, shall become the property of such persons as joint tenants, and the same shall be held for the exclusive use of the persons so named and may be paid to any 1 of said persons during the lifetime of said persons or to the survivor or survivors after the death of 1 of them, and such payment and the receipt or acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said banking institution for all payments made on account of such deposits prior to the receipt of said bank of notice in writing not to pay such deposit in accordance with the terms thereof.

*"The making of the deposit in such form shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding, to which either such banking institutions or surviving depositor or depositors is a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors."* (Emphasis added.)

The effect of the statute is to create a joint tenancy and unless a contrary intention is shown the survivor is entitled to the proceeds of the account. *Jacques v Jacques,* 352 Mich 127 (1958), *In re Rehfeld's Estate,* 198 Mich 249 (1917). While both of the joint tenants are alive the creditors of one of them can reach his interest in the account. *Murphy v Michigan Trust Co,* 221 Mich 243 (1922). However, one of the incidents of a joint tenancy is

that the surviving joint tenant takes free of the debts of his cotenant. See 48 CJS, Joint Tenancy, § 1, p 911, 20 Am Jur 2d, Cotenancy and Joint Ownership, § 3, pp 95–96.

The defendant bank claims a lien and right of setoff even though it took no action during the lifetime of the deceased husband to secure the indebtedness by obligating the joint account. Funds which are generally deposited in a bank create a debtor-creditor relationship between the bank and the depositor. *Owosso Masonic Temple Association v State Savings Bank,* 273 Mich 682 (1935). While it is true that some of the older cases speak of a banker's lien, *Gibbons v Hecox,* 105 Mich 509 (1895), *Citizens Savings Bank v Vaughan,* 115 Mich 156 (1897), we think the better rule is stated in 10 Am Jur 2d, Banks, § 666, pp 636–637:

" * * * While this right is frequently called a lien, strictly speaking, it is not such when applied to a general deposit, for, as is well understood, funds on general deposit in a bank are the property of the bank, for which funds the bank is a debtor, and the bank cannot have a lien on its own property; the banker's lien does not, therefore, by the very nature of the transaction and by the further force of the customs and usages of the banking business, extend to general deposits, but rather, has generally been confined to securities and valuables which may be in the banker's custody. This right of a bank with respect to general deposits is more accurately a right of setoff, for it rests upon, and is coextensive with, the right to set off as to mutual demands. But whether the right of the bank is called a lien or a right of setoff, so far as matured indebtedness of the bank is concerned, the practical effect is the same. The cross demands are satisfied so far as they are equal leaving whatever balance may be due on either as the true amount of the indebtedness from the one party to the other.

"In accordance with the foregoing discussion, a general deposit made while the bank holds the demand note of the depositor, or made when the deposit account is overdrawn, raises an implied consent to the application of the deposit to such overdraft or obligation. Thus, the bank has an option to set off its indebtedness to the depositor against any debt due from the latter to the bank, but until the bank elects to exercise its right of setoff anyone in favor of whom checks are drawn and paid takes the funds free of any claim by the bank. *The rights of the parties must therefore be determined as of the time when the bank elects to exercise its right of setoff.*" (Emphasis added.)

Accordingly, the interests of the parties must be determined as at the time of death of the husband, Harold Kenneth Guilds. As previously stated, as of the date of death no action had been taken by the bank or by the depositors to either secure the indebtedness by the account or to indicate any intention to create anything other than a joint tenancy. Thus, this case is unlike the situation in *Hindman v Community National Bank of Pontiac,* 14 Mich App 746 (1968). In *Lau v Lau,* 304 Mich 218, 224 (1943), the Supreme Court said:

"Reasonably clear and persuasive proof, stronger than appears in this record, is required to overcome the statutory provision that deposits of the character here involved 'become the property of' the survivor of the joint depositors."

So here there is no proof to overcome the statutory presumption and as of the date of death the funds on deposit became solely those of the surviving wife and were not subject to the indebtedness of the deceased husband. See also *DeForge v Patrick,* 162 Neb 568; 76 NW2d 733 (1956).

We note further that the defendant declined the opportunity to amend its pleadings to allege fraud

or undue influence. We agree that the granting of summary judgment under GCR 1963, 117.2(2) for failure to state a valid defense was proper.

Affirmed.

All concurred.